NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted April 16, 2008*
Decided April 29, 2008

Before

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-2691

NATHAN ANTOINE,
    *Plaintiff-Appellant*,

    *v.*

ALAN M. UCHTMAN, *et al.*,
    *Defendants-Appellees*.

Appeal from the United States District Court for the Southern District of Illinois.

No. 06-207-JPG
J. Phil Gilbert, *Judge*.

**Order**

Nathan Antoine, a prisoner of Illinois, contends in this action under 42 U.S.C. §1983 that guards violated his constitutional rights by pressing disciplinary charges and making statements that he interprets as retaliation for filing grievances. The district court dismissed the complaint at the screening stage under 28 U.S.C. §1915A.

We start with the discipline. Antoine arranged for another prisoner to create what Antoine styles "art work," in exchange for some cigarettes and cigars. Antoine gave the

---

* The defendants were not served with process in the district court and have elected not to participate in the appeal. After examining appellant's brief and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

smoking materials to Swafford, a third inmate, in an effort to prevent guards from finding them in his possession. Antoine believed, correctly as it turned out, that the guards suspected him of engaging in forbidden commerce. When guards searched Swafford and found the tobacco products, Antoine admitted that he was the real owner. The guards charged him with "trading or trafficking". A prison disciplinary panel found that Antoine had violated prison rules—but did not say which. He was placed in disciplinary segregation and deprived of commissary privileges for a month; he also lost his job in the prison cafeteria. The disciplinary finding was set aside on an internal appeal because of the board's failure to specify which rule Antoine had transgressed.

Antoine contends that these proceedings violated the due process clause of the fourteenth amendment, but that argument is unavailing because the penalties—a month's segregation and loss of commissary privileges, and loss of prison employment—affect neither "liberty" nor "property" as *Sandin v. Conner*, 515 U.S. 472 (1995), defined those terms in the context of prison conditions. See also, e.g., *Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991) (en banc) (loss of prison employment does not affect liberty or property interests). The due process clause applies only to deprivations of life, liberty, and property; because Antoine lost none of these things, he was not entitled to any particular process or quantum of evidence. Nor does it matter (given Antoine's admission that he was using the tobacco products to trade with another prisoner) that a guard may have filed the "trading or trafficking" charge because he had it in for Antoine.

Antoine's other arguments concern statements that, he maintains, several guards made to him or in his presence. Some of the statements that Antoine imputes to the guards are racist; others are threatening. He calls these, like the filing of the trading-or-trafficking charge, "retaliatory." It is not clear to us what provision of the Constitution Antoine believes has been violated. It can't be the due process clause—not only because the penalty the board meted out did not affect liberty or property, but also because the due process clause does not regulate the content of public employees' speech, even if that speech is defamatory. See *Paul v. Davis*, 424 U.S. 693 (1976).

Another possibility is that the guards' statements might impinge on Antoine's right to speak, and petition the government for redress of grievances, by filing complaints through the prison's grievance machinery. Because the government has its own right of speech, there is no rule that public employees cannot inform private actors about their dissatisfaction with statements that the private actors have made. The President is free to disparage the views stated in a newspaper's editorial, and it would not become a violation of the Constitution if the President swore in the course of doing so. The most one could say is that public officials may not take adverse actions that would lead reasonable people to maintain silence rather than speak out. Cf. *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006). (This is "the most" one can say because *White* deals with the rights of private employees under a statute that contains an explicit rule against retaliation; the speech rights of prisoners are more limited.)

Antoine does not contend that the guards took any concrete action that dissuaded him from continuing to file grievances; indeed, his complaint and brief reveal that every time a guard made a statement that he deemed racist or threatening, he filed a fresh grievance against that guard. He has not been silenced, and the Constitution does not compel guards to address prisoners in a civil tone using polite language. Prisons may think it well to control guards' manner of speech, but that is for statutes and regulations (or perhaps the common law) rather than constitutional right.

AFFIRMED